# Third District Court of Appeal

## State of Florida

Opinion filed January 13, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-811
Lower Tribunal No. 18-445
_____

**Raul Parisi,**
Appellant,

vs.

**Maria Isabel Quadri De Kingston, etc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Rosa C. Figarola, Judge.

Barakat Law P.A., and Jocelyne A. Macelloni and Brian Barakat, for appellant.

Chepenik Trushin, LLP, and Daniel F. Bachman and Danielle Birman, for appellee.

Before FERNANDEZ, SCALES and GORDO, JJ.

SCALES, J.

Raul Parisi, a co-defendant below, appeals a May 22, 2020 non-final order denying Parisi's motion to dismiss for lack of personal jurisdiction.[1] Because the amended complaint lacks sufficient allegations to extend long arm-jurisdiction over Parisi, either for participating in a civil conspiracy to commit a tortious act in Florida or, in the alternative, under the alter-ego theory,[2] we reverse and remand with directions that the amended complaint be dismissed with leave to amend.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

Parisi is a citizen and resident of Argentina. Parisi's friend, Maria Cecilia Quadri ("decedent"), was domiciled in Argentina at the time of her death on November 7, 2016. Maria Isabel Quadri de Kingston is the decedent's sister. On January 15, 2018, Quadri de Kingston, as her sister's personal representative, filed a petition for ancillary administration of the decedent's estate in the Miami-Dade County Probate Court. In re: Maria Cecilia Quadri, 2018-180-CP-02.

---

[1] We have jurisdiction to review the non-final order. See Fla. R. App. P. 9.130(a)(3)(C)(i) (providing Florida's district courts of appeal with jurisdiction to review non-final orders that "determine . . . the jurisdiction of the person").

[2] As discussed in more detail, *infra*, the "alter-ego theory" relieves a plaintiff of the obligation to independently establish personal jurisdiction over a nonresident individual under Florida's long-arm statute if: (i) the court otherwise has personal jurisdiction over a resident corporation or limited liability company; and (ii) a plaintiff adequately establishes that the subject entity is merely an alter-ego of the nonresident, individual defendant. See Bellairs v. Mohrmann, 716 So. 2d 320, 322 (Fla. 2d DCA 1998).

2

On January 31, 2018, Quadri de Kingston, as personal representative, filed the instant, separate action against Parisi and other individuals in the probate court (lower tribunal number 18-445-CP-02). The amended complaint alleges, in relevant part, two civil conspiracy counts against Parisi and co-defendants Oscar Piccolo and Oxen Group, LLC with respect to Oxen Group's acquisition of the decedent's real property (a condominium unit located in Miami) three days prior to the decedent's death.

On December 17, 2019, Parisi moved to dismiss the amended complaint for lack of personal jurisdiction. Specifically, Parisi argued that the pleading failed to allege sufficient jurisdictional facts to subject Parisi, a nonresident defendant, to personal jurisdiction under either Florida's long-arm statute or the alter-ego theory. Parisi also filed a declaration in support of his motion to dismiss, asserting, *inter alia*, that: (i) "I own Oxen Group, LLC, a Delaware company which was formed in 2014"; (ii) "Oxen Group has always kept its own accounts, separate from my own, and filed the appropriate tax returns"; and (iii) "I do not personally engage in any business in Florida, and I only make occasional visits to Florida as a tourist."

On February 26, 2020, Quadri de Kingston filed a memorandum of law in opposition to Parisi's motion to dismiss. Therein, Quadri de Kingston argued that because (i) the amended complaint alleged two civil conspiracy claims against Parisi, Piccolo, and Oxen Group, and (ii) at least one conspiracy member, Piccolo,

3

was alleged to have committed tortious acts towards the decedent in Florida in furtherance of the conspiracy, the trial court had personal jurisdiction over nonresident Parisi under Florida's long-arm statute.[3,4] Quadri de Kingston filed a declaration supporting her opposition to the motion to dismiss. Her declaration purported to expound upon the conspiracy allegations set forth in the amended complaint.

On February 27, 2020, the trial court held a non-evidentiary hearing on Parisi's motion to dismiss. On May 22, 2020, the court entered an order denying, in summary fashion, the motion. Parisi timely appeals this May 22, 2020 non-final order.

---

[3] Florida's long-arm statute provides, in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
>     . . . .
>
> 2. Committing a tortious act within this state.

§ 48.193(1)(a)2., Fla. Stat. (2018).

[4] While her amended complaint purported to allege that the lower court had personal jurisdiction over Parisi based on the alter-ego theory, Quadri de Kingston's memorandum of law in opposition to Parisi's motion to dismiss did not make this separate argument.

4

## II. ANALYSIS[5]

Florida courts conduct a two-step inquiry to determine whether a court has personal jurisdiction over a nonresident defendant. See Belz Investco Ltd. v. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)). The first prong focuses exclusively on the plaintiff's complaint, and whether it either tracks the language of Florida's long-arm statute (section 48.193(1)-(2) of the Florida Statutes) or alleges facts sufficient to show that the defendant's actions fit within one or more subsections of the statute. Id. If the complaint contains sufficient allegations to establish that Florida's long-arm statute applies, the court then conducts the second prong of the inquiry, determining whether the defendant has "sufficient minimum contacts" with Florida to satisfy constitutional due process concerns. Id. "If Florida's long-arm statute does not provide a basis for personal jurisdiction under the initial statutory prong of this inquiry, the constitutional analysis is unnecessary." Homeway Furniture Co. of Mount Airy, Inc. v. Horne, 822 So. 2d 533, 536 (Fla. 2d DCA 2002).

---

[5] This Court reviews *de novo* the trial court's ruling on a motion to dismiss for lack of personal jurisdiction. See Castillo v. Concepto Uno of Miami, Inc., 193 So. 3d 57, 59 (Fla. 3d DCA 2016).

Here, Quadri de Kingston's amended complaint neither cites to section 48.193, nor tracks the language of the statute. Instead, the pleading makes allegations with respect to two, independent grounds for obtaining long-arm jurisdiction over a nonresident defendant: participating in a civil conspiracy to commit a tortious act in Florida and the alter-ego theory. See Abdo v. Abdo, 263 So. 3d 141, 145 (Fla. 2d DCA 2018) (recognizing that "the alter ego theory of long-arm jurisdiction [is] a limited exception to the Venetian Salami two-step inquiry"). Quadri de Kingston argues that the amended complaint's allegations are sufficient to extend personal jurisdiction over Parisi under both grounds, and, alternatively, any deficiencies in her complaint's allegations are ameliorated by the declaration she filed as part of her opposition to Parisi's motion to dismiss. For the following reasons, we disagree and reverse.

*A. Civil Conspiracy*

"[I]f a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute." NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 448 (Fla. 4th DCA 2012); § 48.193(1)(a)2., Fla. Stat. (2018). "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to

6

do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

But, a claim for civil conspiracy must contain clear, positive and specific allegations; general allegations of conspiracy are not sufficient. See World Class Yachts, Inc. v. Murphy, 731 So. 2d 798, 799 (Fla. 4th DCA 1999). And, where the conspiracy allegations are deficient, the trial court must dismiss the complaint against a nonresident defendant for lack of personal jurisdiction. Id. "[A] court will decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." Czyzyk, 95 So. 3d at 448; Abdo, 263 So. 3d at 146 ("[T]o the extent the Appellees/Plaintiffs may hint at such a conspiracy in their second amended complaint, such vague allegations are not sufficient to establish personal jurisdiction.").

Here, the amended complaint alleges, in relevant part:

[General Allegations]

5. Defendant Oxen Group LLC ("Oxen Group") is a Delaware corporation owned and/or controlled by Parisi.

. . . .

7

10. On October 25, 2016, less than two weeks before Decedent died, Decedent's friend, Parisi, obtained a "Special Power of Attorney" from Decedent, on her deathbed in Argentina, in favor of his co-Defendant located in Miami, Florida, Piccolo. . . .

. . . .

15. On November 4, 2016, three days prior to Decedent's death, Piccolo used the Special Power of Attorney to execute a Quit Claim Deed that purported to transfer the Property to Oxen Group, a corporate entity controlled by Parisi. . . .

. . . .

17. Oxen Group is operated as the alter-ego of Parisi, and was used fraudulently for the improper purpose of defrauding Decedent and the Estate and stealing the property that rightfully belonged to the Decedent and rightfully belongs to the Estate.

. . . .

[Specific Allegations]

COUNT IV – CIVIL CONSPIRACY – BREACH OF FIDUCIARY DUTY

53.    The allegations contained in paragraphs 1 through 29 are reincorporated and alleged herein.

54. *Pursuant to an agreement* between Parisi, Oxen Group (Parisi's alter-ego) and Piccolo, Parisi procured the Special Power of Attorney from Decedent and in favor of Piccolo, which was used to facilitate and effectuate the illegal transfer of the property to Oxen Group, through the Quit Claim Deed.

55. Piccolo owed a fiduciary duty to Decedent, pursuant to the Special Power of Attorney.

8

56. Piccolo breached the fiduciary duty owed to Decedent by conveying the Property to Oxen Group, which was owned and controlled by Parisi.

57. Piccolo breached the fiduciary duty owed to Decedent by conveying the property to Parisi, in that Oxen Group is merely Parisi's alter-ego.

. . . .

60. Piccolo, Parisi and Parisi's alter-ego, Oxen Group, profited from the breach of fiduciary duty, as was the intent of *their agreement*.

. . . .

COUNT VI – CIVIL CONSPIRACY – TRESPASS TO REAL PROPERTY

68. The allegations contained in paragraphs 1 through 29 are reincorporated herein.

69. *Pursuant to an agreement* between Piccolo, Parisi, and Parisi's alter-ego, Oxen Group, Parisi procured the Special Power of Attorney from Decedent and in favor of Piccolo, which was used to facilitate and effectuate the illegal transfer of the Property to Oxen Group, through the Quit Claim Deed.

. . . .

71. Pursuant to a void or invalid Special Power of Attorney, Piccolo gifted the Property to Oxen Group, which is the alter-ego of Parisi.

. . . .

73. Parisi and Oxen Group have unlawfully refused and/or failed to return the Property.

74. Defendants profited from their wrongful taking of and dominion over the Property and rental income, as was the intent of *their agreement*.

9

(Emphasis added).

The gravamen of the amended complaint is that Parisi "conspired" with Piccolo and Oxen Group to obtain ownership of the decedent's Miami condominium. That is, Parisi obtained from the decedent – who was on her deathbed in Argentina – a Special Power of Attorney authorizing Piccolo to execute documents related to the decedent's Miami condominium. Piccolo, who was located in Florida, then allegedly breached a fiduciary duty owed to the decedent by executing a quit claim deed, deeding the condominium to Oxen Group, a Florida limited liability company that is allegedly Parisi's alter-ego. Parisi, through his control of Oxen Group, then purportedly took possession of the condominium unit and split the rental income derived from the unit with Piccolo per their agreement.

We conclude that the amended complaint's allegations are not sufficiently clear and specific as to the existence of a civil conspiracy and, therefore, that the trial court erred by not dismissing the complaint against nonresident Parisi. The pleading vaguely ties the events together by alleging, in conclusory fashion, that the circumstances unfolded "[p]ursuant to an agreement between Parisi, Oxen Group (Parisi's alter-ego) and Piccolo." Alleging simply that the co-defendants had an "agreement" to profit from Piccolo's alleged breach of fiduciary duty and that the property transfer was "illegal," without more, was insufficient. See Abdo, 263 So. 3d at 146.

10

We find the Second District's decision in Abdo to be persuasive on this issue. There, our sister court concluded that the plaintiff failed to sufficiently allege a conspiracy to commit a breach of fiduciary duty where the complaint, despite alleging that the resident defendant had breached a fiduciary duty by transferring the plaintiff's websites to two nonresident co-defendants, "failed to allege with any specificity any facts that [the two nonresident co-defendants] . . . conspired with [the resident defendant] to facilitate such a breach." Id. The instant complaint is similarly deficient because it fails to allege, with any specificity, any facts evidencing *how* Parisi conspired with Piccolo and Oxen Group to facilitate either Piccolo's breach of fiduciary or Parisi's trespass upon the decedent's property.[6]

The transcript of the non-evidentiary hearing conducted below on Parisi's motion to dismiss reflects that the trial court, at least initially, acknowledged that the amended complaint's allegations were insufficient for lack of specificity as to civil

---

[6] Quadri de Kingston argues that we should affirm based on Czyzyk. We disagree because that case is clearly distinguishable. In Czyzyk, the complaint generally alleged that the nonresident defendant "along with other co-defendants, conspired to breach . . . fiduciary duties to [plaintiff] 'by collectively concocting the plan to use [plaintiff's] confidential information, stolen by password protected e-mail, to structure a competing company to [plaintiff], all while [co-defendants] were officers and directors of [plaintiff]." 95 So. 3d at 448-49. Unlike this case, the complaint in Czyzyk included two specific allegations setting forth how the defendants accomplished their conspiracy: "1) [the nonresident defendant] was the recipient of e-mail with confidential data on [plaintiff's] employees"; and 2) "[the nonresident defendant] met with [a co-defendant] in Fort Lauderdale . . . to discuss how [the nonresident defendant's company] could steal [plaintiff's] business." Id. at 449. The instant amended complaint contains no such specificity.

11

conspiracy. Therein, the trial court queried whether it should simply dismiss the pleading without prejudice so that Quadri de Kingston could amend her complaint to include new, specific factual allegations incorporating certain statements contained in her declaration. Quadi de Kingston's declaration, filed in response to Parisi's motion to dismiss, stated as follows:

10. The [Special Power of Attorney] was used to convey the Property to Oxen Group on November 4, 2016, three days before my sister's death, and at a time when Piccolo and Parisi knew that she was too sick to discover, protest or otherwise thwart their conspiracy, which was taking place in Miami pursuant to the actions of Piccolo and in coordination with Parisi, who was keeping an eye on [the decedent's] condition in Argentina *while simultaneously advising and instructing Piccolo in Miami regarding the conveyance of the property.*

. . . .

18. At the second day of Piccolo's deposition, Piccolo admitted that *Parisi communicated to Piccolo in Miami that [the decedent's] health was on the decline and to proceed with the transfer of the Property to Oxen Group,* which was done on November 4, 2016, while [the decedent] was incapacitated in the hospital a mere three days before her death.

(Emphasis added).

At the non-evidentiary hearing, Parisi's counsel suggested that the trial court dismiss the amended complaint with leave to amend, and even conceded that Quadri de Kingston could successfully allege a civil conspiracy claim if she incorporated these statements, as specific factual allegations, into a second amended complaint. The trial court, though, ended the hearing without ruling on Parisi's motion to

12

dismiss and, on May 22, 2020, entered the challenged order denying Parisi's motion without explication.

While not entirely clear, it appears that the trial court was persuaded that Quadri de Kingston's competing declaration provided the requisite level of specificity to supply what was missing from Quadri de Kingston's amended complaint. Nevertheless, the law is well settled that the *operative pleading* must contain allegations as to civil conspiracy that are clear, positive and specific. Murphy, 731 So. 2d at 799. Until the plaintiff – within the four corners of the complaint – pleads a legally sufficient basis for extending long-arm jurisdiction over a nonresident defendant, the defendant is not required to file an affidavit, declaration or present other evidence to contest personal jurisdiction. See Crownover v. Masda Corp., 983 So. 2d 709, 713 (Fla. 2d DCA 2008). That Parisi filed a declaration supporting his motion to dismiss, and that Quadri de Kingston filed her own competing declaration, is inconsequential because the operative pleading is impermissibly vague and conclusory and, therefore, does not sufficiently plead a basis for extending jurisdiction over Parisi. Venetian Salami's burden shifting analysis is triggered, and the parties' competing affidavits become relevant, only when the operative pleading adequately alleges a basis for extending long-arm jurisdiction over a non-resident defendant; a non-resident defendant does not have

13

to anticipate the plaintiff, in a responsive declaration, affidavit, or otherwise, asserting entirely new allegations in support of personal jurisdiction.[7]

Accordingly, because the amended complaint contains only vague and conclusory allegations with respect to civil conspiracy that are not sufficient to establish personal jurisdiction over Parisi, see Abdo, 263 So. 3d at 146; Czyzyk, 95 So. 3d at 448, the trial court should have dismissed the amended complaint with leave to amend. Murphy, 731 So. 2d at 799.[8]

*B. Alter-ego*

"The alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process for establishing long-arm jurisdiction as set forth in Venetian Salami Co. v. Parthenais, 554 So. 2d 449, 502 (Fla. 1989)." Bellairs v. Mohrmann, 716 So. 2d 320, 322 (Fla. 2d DCA 1998) (footnote omitted). "Under the alter ego theory, the complaint only must allege facts sufficient to pierce the corporate veil of the resident corporation." Id. To this end, the complaint must contain allegations demonstrating both that the corporation is the "mere instrumentality" of the nonresident defendant and that the nonresident defendant

---

[7] We express no opinion as to whether the facts asserted in Quadri de Kingston's declaration, if incorporated into an amended pleading, would sufficiently allege a civil conspiracy or the underlying torts of breach of fiduciary duty or trespass to property.

[8] Unless the right has been abused, trial courts should give the plaintiff leave to amend a deficient pleading. Murphy, 731 So. 2d at 800; Fla. R. Civ. P. 1.190(a).

14

engaged in "improper conduct in the . . . use of the corporation." <u>Id.</u> at 323 (quoting <u>Dania Jail-Alai Palace, Inc. v. Sykes</u>, 450 So. 2d 1114 (Fla. 1984)). Specifically, to extend personal jurisdiction over Parisi under the alter-ego theory in this case, Quadri de Kingston's amended complaint must have alleged facts showing that: (i) Parisi dominated and controlled Oxen Group to such an extent that Oxen Group's independent existence was non-existent and Parisi was the entity's alter-ego; (ii) Parisi used Oxen Group's legal form fraudulently or for an improper purpose; and (iii) Parisi's fraudulent or improper use of Oxen Group's legal form caused injury to the decedent. <u>See</u> <u>BEO Mgmt. Corp. v. Horta</u>, 45 Fla. L. Weekly D2576, 2020 WL 6751313, at *2 (Fla. 3d DCA Nov. 18, 2020).

Here, the amended complaint merely alleges, in conclusory fashion, that "Oxen Group is operated as the alter-ego of Parisi, and was used fraudulently for the improper purpose of defrauding Decedent and the Estate and stealing the property that rightfully belonged to the Decedent and rightfully belongs to the Estate," and then repeatedly references Oxen Group throughout the pleading as "Parisi's alter-ego." These allegations are not only insufficient to pierce the corporate veil of Oxen Group, but also are wholly insufficient to establish personal jurisdiction over Parisi under the alter-ego theory. <u>See</u> <u>Abdo</u>, 263 So. 3d at 150.

Further, we reject Quadri de Kingston's argument that we should affirm because Parisi's declaration failed to contest the amended complaint's generic alter-

15

ego allegations. Again, until the plaintiff pleads a legally sufficient basis for long-arm jurisdiction within the four corners of the complaint, the nonresident defendant is not required to file an affidavit, declaration or present other evidence to contest personal jurisdiction. See Crownover, 983 So. 2d at 713. Parisi very clearly argued in his motion to dismiss that the amended complaint's allegations were insufficient to establish personal jurisdiction over him under the alter-ego theory. In this case, faced with these insufficient allegations, Parisi did not have to do anything more than challenge the exercise of personal jurisdiction over him by moving to dismiss Quadri de Kingston's amended complaint.

Accordingly, because the amended complaint's allegations with respect to piercing the corporate veil are not sufficient to establish personal jurisdiction over Parisi under the alter-ego theory, see Abdo, 263 So. 3d at 146, the trial court should have dismissed the amended complaint with leave to amend. Murphy, 731 So. 2d at 799.

## III. CONCLUSION

The amended complaint sets forth only vague and conclusory allegations with respect to a civil conspiracy between nonresident Parisi and residents Piccolo and Oxen Group; these allegations are not sufficient to establish personal jurisdiction over Parisi under section 48.193(1)(a)2., Florida's long-arm statute. The pleading further alleges only conclusory allegations that are both insufficient to pierce the

16

corporate veil of Oxen Group and to establish personal jurisdiction over Parisi under the alter-ego theory. We, therefore, reverse the May 22, 2020 non-final order, and we remand with instructions that the trial court dismiss the amended complaint with leave to amend.

Reversed and remanded with instructions.